**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EMBASSY REALTY | ) | CASE NO.  1:11CV1545 |
| INVESTMENTS, LLC, et al., | ) | |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFFS, | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION & |
| CITY OF CLEVELAND, et al., | ) | ORDER |
| | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is defendants' motion to dismiss the Complaint. (Doc. No. 4.) Plaintiffs oppose the motion (Doc. No. 8), and defendants have replied. (Doc. No. 10.) Plaintiffs have filed a motion to strike the materials attached to defendants' motion, or, in the alternative, to convert the motion to dismiss to a motion for summary judgment. (Doc. No. 7.) This motion is opposed, as well. (Doc. No. 9.) Both motions are fully briefed and ripe for disposition.

## I.     BACKGROUND

The focal point of this action is a piece of commercial property located in Cleveland, Ohio. On December 8, 2008, plaintiff Embassy Realty Investments, LCC ("Embassy") purchased the property from plaintiff John Barnes, Jr. ("Barnes"), who had previously obtained the property from Southeast Cleveland Church of Christ, Inc. ("the Church"). Barnes is a shareholder of Embassy.

A rather long and torturous procedural and administrative history surrounds the property, and the Court will only provide as much background as necessary to place the pending motions in proper context. On July 13, 1998, while the property was still owned by the Church, the Department of Community Development, Division of Building and Housing for defendant City of Cleveland ("the City"), issued a notice of violation of housing ordinances for the property, and condemned it. (BBS Docket A-141-09, Doc. No. 4-6, Page ID # 213; Complaint at ¶ 11, Doc. No. 1.) The notice was served upon the Church, with the administrative right to appeal the notice to the City's appeals boards. (Page ID # 213.)

In their Complaint, plaintiffs allege that the 1998 notice was defective "on both procedural and substantive grounds" and was "not properly recorded so that subsequent purchasers could properly ascertain the condition of the property. Further defendant City of Cleveland took no further action on the condemnation from 1998 until 2007." (Compl. at ¶ 11.) Because of the alleged deficiencies and lack of action on the part of the City, Barnes's title search in 2005 did not uncover the City's notice of violation, and Barnes purchased the property unaware that it had been condemned. (*Id*. at ¶ 10.)

In 2007, Barnes hired a licensed architect to prepare plans to remodel the building located on the property. He submitted the plans to the City's Department of Building and Housing in order to obtain construction permits, and contracted with plaintiff Captain Buffalo Foods, Inc. ("Captain Buffalo") to construct and operate a coffeehouse and business offices in the building. (*Id.* at ¶¶ 12-14.) On May 2, 2007, the City issued a building permit for the building, which was later revoked due to the 1998 violations notice. (Compl. at ¶ 15.)

2

On January 9, 2007, the City's Department of Building and Housing performed an inspection of the property. (Record of Cleveland Municipal Court, Case No. 2007 CRB 7418, Citation, Page ID # 522.)[1] Based upon that inspection, on January 10, 2007, the Department of Building and Housing, Division of Code Enforcement, issued a second notice for building code violations at the property. (*Id.*, Page ID # 523.) The notice included a stop work order for illegally constructing a second floor onto the building without proper plan approvals and building permits. (*Id.*, Page ID # 524.)

On March 15, 2007, the City instituted a criminal prosecution against Barnes in Cleveland Municipal Housing Court. (*Id.*, Page ID # 519.) After the criminal complaint was amended to replace Captain Buffalo as the defendant, Captain Buffalo entered a no contest plea to a building code violation. Captain Buffalo was ordered to pay a fine of $25,000. (*Id.*, Judgment, Page ID # 533-34.)

According to the Complaint, "[f]rom 2007 until 2009 plaintiff Barnes attempted to work with the City to resolve the outstanding building permit issues." (Compl. at ¶ 16.) Defendants' motion chronicles Barnes's various administrative requests for permits and the denials of these requests, multiple appeals of administrative orders, and a request for a temporary restraining order to prevent the City from demolishing the building, culminating in an evidentiary hearing, on August 5, 2009, before the Cleveland Board of Building Standards and Building Appeals ("local BBS/BA") to resolve the

---

[1] Defendants have attached many of the documents relating to the administrative and judicial proceedings to their motion to dismiss, and these documents are the subject of plaintiffs' motion to strike. As set forth below, because the Court may take judicial notice of these administrative proceedings, it is appropriate to include them in a review of the procedural history.

demolition issue. (BBS Docket A-141-09, Doc. No. 4-5, Page ID # 193.) Defendant Denk chaired the hearing. (*Id*., Page ID # 194.)

At the conclusion of the hearing, the local BBS/BA issued an emergency resolution remanding the matter to the City's Building Department. (*Id.* at 208-209; BBS/BA Docket A-141-09, Doc. No. 4-6, Page ID # 301-02.) The Building Department began demolition of the building on the property at once, but its efforts were blocked by a successful request by Barnes for a temporary restraining order. After the restraining order was dissolved, the Building Department completed its demolition work on the property and the building was razed on July 27, 2009. (Compl. at ¶ 21.)

On August 26, 2011, plaintiffs, Embassy Realty Investments ("Embassy"), Barnes, and Captain Buffalo, filed the present action. They allege that defendants, the City, Edward Rybka, Ronald O'Leary, Timothy Wollis, Joseph Denk Sr., David Cooper, and Peter Stewart,[2] violated their constitutional rights, including: (1) the right to due process under the Fourteenth Amendment; (2) the Fourth Amendment right to be free from unreasonable search and seizure; and (3) the Fifth Amendment right to be free from unlawful taking of property. Plaintiffs also brought a *Monell* claim against the City, alleging that the City's action in razing the building constituted an illegal policy and practice.

In the Complaint, plaintiffs allege that they appealed the final decision of the BBS/BA to the Cuyahoga County Common Pleas Court, and that "while the appeal was pending, and without any further court orders, warrants or permission from any entity, including plaintiffs," defendants illegally caused the building to be razed. (Compl.

at ¶ 21.) Plaintiffs seek damages, as well as declaratory and injunctive relief. (*Id.*, Page ID # 9.)

## II.      STANDARD OF REVIEW

The gravamen of defendants' motion to dismiss is that the *Rooker-Feldman* and *Heck* doctrines serve to divest this Court of jurisdiction. Defendants also seek absolute judicial immunity for defendant Denk. Though defendants do not indicate the basis for their motion, it is apparent that the present motion is brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Because the motion also tests the legal and factual sufficiency of the Complaint allegations, principles applicable to Rule 12(b)(6) motions are also relevant. The Court will address each standard.

### A.      <u>Rule 12(b)(1)</u>

Motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. *Id.; Ritchie,* 15 F.3d at 598. No presumption of truthfulness applies to the factual allegations, and the court is free to weigh the evidence to satisfy itself as to the existence of its power to hear the case. *Ritchie*, 15 F.3d at 598.

The Court will construe the challenge here as a facial attack. The *Rooker-Feldman* abstention argument and the *Heck* bar argument arise out of the Complaint,

---

[2] The Complaint also names John Does 1-10 as defendants.

itself, as the Complaint makes numerous references to the various administrative orders, decisions, and appeals taken with respect to the subject property. As set forth more fully in the Court's discussion of plaintiffs' motion to strike, the documents attached to the motion to dismiss, mostly relating to the administrative and criminal proceedings surrounding the property at issue here, are either referenced in the Complaint and central to plaintiffs' claims, or are of type which the Court may take judicial notice, or both. *See, e.g., King v. CitiMortgage, Inc*., Case No. 2:10cv1044, 2011 U.S. Dist. LEXIS 79722, at *11-*12 (S.D. Ohio July 20, 2011) (treating motion to dismiss under *Rooker-Feldman* doctrine as a facial jurisdictional attack, notwithstanding the attachment of public documents from foreclosure proceedings).

### B.      Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss [under Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true,

6

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Therefore, the Court must construe the Complaint in the light most favorable to the plaintiffs. *U.S. ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007); *Horattas v. Citigroup Fin. Mkts., Inc.*, 532 F. Supp. 2d 891, 895-96 (W.D. Mich. 2007) (citing *Nat'l Surety Corp. v. Hartford Cas. Ins. Co.,* 493 F.3d 752, 754 (6th Cir. 2007)).

### III.     DISCUSSION

#### A.     **Plaintiffs' Motion to Strike**

Plaintiffs seek to exclude from consideration the documents attached to defendants' motion to dismiss. They claim that these documents relate to matters that are beyond the Complaint. In the alternative, they request that the Court convert defendants' motion to one for summary judgment, defer ruling on the motion, and allow plaintiffs leave and time to conduct discovery.

"When reviewing a motion to dismiss, a district court may not consider matters beyond the complaint." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) (further citation omitted)). If the district court considers matters outside of the complaint, the motion to dismiss is effectively converted to a motion for summary judgment. *Id.*

7

(citing *Kostrzewa*, 247 F.3d at 643). However, "[i]n ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.*, 721 F. Supp. 2d 663, 669 (N.D. Ohio 2010) (citing *Whittiker v. Deutsche Bank Nat'l Trust. Co.*, 605 F. Supp. 2d 914, 924-25 (N.D. Ohio 2009) (additional citations omitted)); *see New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

"A defendant may introduce certain pertinent documents if the plaintiff chooses not to do so." *Whittiker*, 605 F. Supp. 2d at 936 (collecting cases). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* (citation omitted). Thus, a court may consider documents referred to in the pleadings that are integral to the claims without converting a motion to dismiss into one for summary judgment. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *overruled in part on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Likewise, a court may consider matters of public record in deciding a motion to dismiss without requiring that the motion be considered under Rule 56 of the Federal Rules of Civil Procedure. *See J.P. Silverton Indus. L.P. v. Sohm,* 243 F. App'x 82, 87 (6th Cir. 2007); *Jackson,* 194 F.3d at 745; *also Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004).

The documents attached to defendants' motion to dismiss consist primarily of the records of the various administrative agencies and courts that have

addressed issues relevant to the property in question. Many of these records—or the underlying administrative and judicial proceedings—are specifically referenced in the Complaint and are central to plaintiffs' claims. (*See* Compl. at ¶¶ 11, 15, 18-21.)  Indeed, repeated reference is made in the Complaint to the administrative proceedings and the appeals taken from these proceedings. Moreover, it is the alleged conduct of the defendants during the course of these administrative proceedings; namely, the razing of the building during the pendency of an appeal, that plaintiffs claim has caused the injury for which they seek monetary and other types of relief. As such, these records may be considered in the context of this Rule 12(b) motion. *See, e.g., Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966, 972 n.1 (N.D. Ohio 2010) (proper to consider collective bargaining agreement where it was referred to in the complaint and was central to many of the plaintiff's allegations).

        In addition, the Court may take judicial notice of the existence of these public records. *See Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *New Eng. Health Care Emples. Pension Fund*, 336 F.3d at 501; *see, e.g., Russell v. Tribley*, Case No. 2:10CV14824, 2011 U.S. Dist. LEXIS 107335, at *8 (E.D. Mich. Aug. 10, 2011) (taking judicial notice of records reflecting plaintiff's exhausting of administrative remedies). This is not to say, however, that the facts contained within these public records are appropriate for consideration by the Court. Rule 201(b) of the Federal Rules of Evidence provides that ""The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." While the existence of the

administrative and court records are capable of accurate and ready determination, the facts contained within any particular document may not be easily confirmed. As such, while the Court takes judicial notice of the existence of the documents and the proceedings in which the documents were generated, including any rulings made by the various agencies and state courts, the Court does not take judicial notice of the truth of any statement of facts contained within these documents. *See Winget*, 537 F.3d at 576 (district court properly took judicial notice that plaintiff had lodged an objection in a bankruptcy proceeding without taking judicial notice of the facts contained in the bankruptcy court documents); *see, e.g., Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.*, Civil Action No. 3:09cv487, 2009 U.S. Dist. LEXIS 76654, at *12-*13 (M.D. Tenn. Aug. 27, 2009) (taking judicial notice of the existence of another court's opinions and statements of facts, but not of the truth of those statements); *compare Lee v. County of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (trial court erred in taking judicial notice of disputed facts stated in public records).

Because the documents attached to defendants' motion are public records, and many are referenced in the Complaint and are central to plaintiffs' claims, the Court finds that it may consider the existence of these documents in ruling on defendants' dispositive motion. As such, plaintiffs' motion to strike, or, alternatively, to convert the motion to one for summary judgment, is denied.

B.      **The *Rooker-Feldman* Doctrine Does Not Bar This Litigation**

Defendants contend that plaintiffs' claims should be dismissed for lack of subject matter jurisdiction because they are barred by the *Rooker-Feldman* doctrine. Specifically, defendants argue that plaintiffs are essentially seeking relief from the

10

various administrative decisions that resulted in the demolition of the building on the property in question. According to defendants, a ruling in plaintiffs' favor in this action would necessarily call into question the many administrative rulings related to the property. As such, it is defendants' position that the constitutional claims raised in this action are "inextricably intertwined" with the state court proceedings, and cannot, therefore, be collaterally attacked in the present litigation. (Doc. No. 4-1, Page ID # 71.)

Plaintiffs suggest that they are not trying to overturn, or call into question, the numerous administrative and court orders and decisions relating to the property. In fact, they insist that defendants acted without court order, or other legal authority, in causing the building on the property to be demolished. (*See* Compl. at ¶ 21.) As such, they maintain that the *Rooker-Feldman* doctrine is not a jurisdictional bar in this case, and, in any event, argue that defendants have applied the wrong standard to the *Rooker-Feldman* analysis.

The *Rooker-Feldman* doctrine arose from two Supreme Court decisions interpreting 28 U.S.C. § 1257(a), a statute which is "designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision."[3] *Kovacic v. Cuy. County Dep't of Children and Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010). Because § 1257(a) limits review of final judgments or decrees by the highest court of the State to certiorari review by the United States Supreme Court, the *Rooker-Feldman* doctrine, by negative inference, precludes such review by lower federal courts. *Id.* at 308-09.

---

[3] *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

Application of the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *See Verizon Md., Inc. v. Public Service Comm. of Md.*, 535 U.S. 635, 644 n.3 (2002) ("[t]he *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this court, *see* § 1257(a)"). However, when a "federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. at 293 (citation and quotation omitted). *See Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (quoting *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 241 F. App'x 285, 287 (6th Cir. 2007) (further citations omitted) ("In the wake of *Exxon*, this circuit has 'distinguished between plaintiffs who bring an impermissible attack on a state court judgment— situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply.")).

The Court finds that, following the decision in *Exxon*, the pertinent inquiry is the "source of the injury" and not simply whether the injury sought to be remedied by the plaintiffs is "inextricably intertwined" with the prior state court and administrative orders and judgments, as defendants have suggested. *See Kovacic*, 606 F.3d at 309

(applying the "source of injury" inquiry and rejecting the "inextricably intertwined" standard); *Lawrence*, 531 F.3d at 368 (same); *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006) (same). Under the proper inquiry, "[i]f the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick*, 451 F.3d at 393.

Applying the "source of the injury" standard, courts have refused to find a jurisdictional bar where the injury flowed from the actions of third-parties during administrative or court proceedings. *See, e.g., Todd v. Weltman, Weinberg & Reis Co*., 434 F.3d 432, 437(6th Cir. 2006) (no jurisdictional bar where defendant's alleged dishonesty that led to garnishment proceeding was the source of the injury, and not the garnishment, itself); *Brown v. First Nationwide Mtg. Corp.*, 206 F. App'x 436, 439-40 (6th Cir. 2006) (mortgagor's claims against individuals involved in mortgage foreclosure proceedings not barred; source of injury was defendants' conduct independent of foreclosure decree itself); *Brent v. Wayne County Dep't of Human Servs.,* Case No. 11-10724, 2011 U.S. Dist. LEXIS 136104, at *28-*29 (E.D. Mich. Nov. 28, 2011) (certain claims alleging misconduct by DES employees during proceedings in family court were not barred by *Rooker-Feldman* as they did not assert an injury derived from the state court judgments themselves); *compare Loriz v. Connaughton*, 233 F. App'x 469, 475 (6th Cir. 2007) (landowner's claims challenging zoning decisions as unconstitutional barred by *Rooker-Feldman*; district court could not grant requested relief without reviewing decisions of state agency and courts and determining that they were improper).

In the present case, plaintiffs argue that the source of their injury is not the orders and rulings in the administrative and state court proceedings. Instead, as set forth in the Complaint, plaintiffs allege that the source of their injury is the decision by the City and other defendants to demolish the building while an appeal was still pending in the common pleas court. (*See* Compl. at ¶ 21.) According to plaintiffs, this action by defendants presents an independent claim that is separate and apart from the underlying administrative order of condemnation, and the subsequent appeals from this order.

The Court finds that this is an exceptionally close call. On the one hand, it is the prior order of condemnation, and the denial of the administrative appeal, that defendants will rely upon as support for the demolition of the building on the property. Still, this Court, or the jury, if this action ultimately goes to trial, could determine that the timing of the demolition violated plaintiffs' constitutional rights, without calling into question the underlying administrative and court decisions—what might have been appropriate following the state court appeal, might have been unauthorized and illegal during the pendency of that appeal. Because the alleged source of the injury is independent of the administrative and court orders relating to the property, the *Rooker-Feldman* doctrine is inapplicable, and defendants are not entitled to dismissal on this ground.

C.      **The *Heck* Doctrine Does Not Bar This Litigation**

Likewise, the *Heck* doctrine does not serve to frustrate this Court's jurisdiction. Defendants argue that Captain Buffalo's August 24, 2007 conviction, for which Captain Buffalo was assessed $25,000 fine and which was never appealed,

14

operates as a bar to plaintiffs' claims. Under the undisputed facts of this case, the *Heck* bar does not apply.

The concern for finality and consistency, in addition to the desire to avoid "parallel litigation over the issues of probable cause and guilt" have led to a general aversion to expanding the opportunities for collateral attack of state criminal convictions. *See Heck v. Humphrey,* 512 U.S. 477, 484-85 (1994) (internal citations and quotation marks omitted). As such, *Heck* generally prohibits the use of actions under 42 U.S.C. § 1983 as an avenue to launch a collateral attack upon a criminal conviction. *Id.* at 486. In its analysis, the majority in *Heck* analogized a § 1983 action to a state law malicious prosecution claim. Noting that termination of the criminal action in favor of the plaintiff was a requirement to any malicious prosecution claim, the majority held that the lack of a favorable termination or outcome of the criminal action would also defeat a § 1983 action. *Id.* at 484-86.

In his concurring opinion, Justice Souter, joined by three other justices, expressed the view that the "favorable-termination requirement" would not preclude a subsequent § 1983 where the conviction or sentence was not subject to testing through habeas review. *Id.* at 500 (Souter, J., concurring). Because habeas review is only available to criminal defendants who are "in custody," those who received only fines, or were sentenced to exceptionally short prison terms, would not have the opportunity to test their convictions and sentences through the habeas process. In such cases, Justice Souter argued that applying *Heck's* favorable-termination requirement would operate to deny altogether a federal forum in which to raise federal constitutional claims. *Id.* at 501.

In *Powers v. Hamilton County Pub. Defendant Comm'n*, 501 F.3d 592 (6th Cir. 2007), the Sixth Circuit adopted the logic that led Justice Souter to conclude that the "favorable-termination requirement" would not bar § 1983 actions where the criminal defendant did not have access to habeas review. While noting that its sister circuits were divided on the question, the Sixth Circuit specifically held that the circuits adopting Justice Souter's analysis had the better position. *Id.* at 603 (citing, among other cases, *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (§ 1983 action could proceed, despite non-compliance with favorable-termination requirement, because plaintiff had been assessed only a monetary fine in his criminal proceeding)). The court in *Powers* concluded that because the plaintiff had received a short sentence (at least one, but not more than 30 days), his conviction and sentence were ineligible for habeas review, and his subsequent § 1983 action was not barred by *Heck*. *Id.* at 603.

A similar result is warranted here. In the present case, plaintiff Captain Buffalo was merely fined for its building code violation.  (Cleve. Muni. Court Criminal Docket, Doc. No. 4-10, Page ID # 533.) It was, therefore, never "in custody" and was never eligible for habeas review. As such, the "favorable-termination requirement poses no impediment" to plaintiffs' constitutional claims. *See Powers*, 501 F.3d at 603. Defendants' motion to dismiss on the basis of *Heck* is denied.

D.   **Defendant Denk is Entitled to Absolute Immunity**

The Complaint alleges that defendant Denk is "the chairman of the City's Board of Building Standards" (Compl. at ¶ 7), and further allege that Denk's board (the local BBS/BA) denied plaintiffs' appeal of the condemnation order. (*Id*. at ¶ 19.) In their motion to dismiss, defendants insist that defendant Denk "is afforded absolute and quasi-

16

judicial immunity for any and all acts taken during the administrative appeal hearings and process conducted on the Property." (Doc. No. 4-1, Page ID # 69.)

"It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction." *Troyer v. Hershberger,* Case No. 5:11CV2536, 2012 U.S. Dist. LEXIS 18419, at *18 (N.D. Ohio Feb. 14, 2012) (citing *Mirles v. Waco*, 502 U.S. 9 (1991), and *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)). The rationale behind the doctrine of absolute judicial immunity is to allow a judicial officer to be "free from harassment of private litigation when conducting his official business." *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980). *See also Forrester v. White*, 484 U.S. 219, 225 (1988) (judicial immunity protects "judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants") (further citations omitted).

Absolute judicial immunity has been extended to non-judicial officers who perform "quasi-judicial" duties. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). "The 'touchstone' for the doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges—that is, because they, too, 'exercise discretionary judgment' as a part of their function." *Antoine v. Byers & Anderson*, 508 U.S. 429, 435-36 (1993) (citations omitted). Such immunity, however, only applies to judicial acts, and does not extend to acts that are "ministerial or administrative in nature." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (citing

17

*Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005)). Moreover, the "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Thus, a "functional" approach is employed in determining whether an official's tasks are so integral to or intertwined with the judicial process that they are entitled to absolute judicial immunity. *Forrester*, 484 U.S. at 224; *Burns*, 500 U.S. at 486; *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Under the functional approach, courts look to "the nature of the function performed, not the identity of the actor who performed it . . .." *Forrester*, 484 U.S. at 229. The Supreme Court has identified six characteristics to assist in this inquiry: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctibility of error on appeal. *Cleaving v. Saxner*, 474 U.S. 193, 202 (1985); *Butz v. Economou*, 438 U.S. 478, 512 (1978).

Defendants observe that the local BBS/BA functions as a fact-finding trial court when it considers an administrative appeal, and argue that Denk, as the chairperson of the local BBS/BA, acted in a judicial capacity when his board considered plaintiffs' administrative appeal. Defendants also highlight the fact that any decisions of the local BBS/BA are subject to review by the state common pleas court. These facts, defendants conclude, suggest that Denk's actions in presiding over plaintiffs' administrative appeal

were decidedly judicial in nature, and entitled to absolute immunity.[4] *See, e.g., Irshad Learning Ctr. v. Cnty. Of DuPage,* 804 F. Supp. 2d 697, 711 (N.D. Ill. 2011) (award of absolute judicial immunity to members of zoning board).

Chapter 11, § 76-6, of the Charter of the City of Cleveland, established the local BSS/BA, and extended to it the jurisdiction to, among other things, "hear and decide appeals from, and to review upon motion of any member of the Board, any order, requirement, decision or determination of the Commissioner of Building and Housing . . .." § 76-6(d). In connection with its duties, the local BBS/BA is required to hold hearings that "shall be open to the public," in which the Board "shall keep a detailed record of its proceedings . . .." Cleve. Code Ord. § 3103.20(b)(1) and (2). When the local BBS/BA sets a hearing, it must give "due notice thereof to the parties, and decide the same within a reasonable time." § 3103.20(e)(4). During the hearing, the Chairperson "may administer oaths and compel the attendance of witnesses." § 3103.20(b)(1) and (2). At the conclusion of a hearing, the local BBS/BA must "set forth the reasons for its decisions . . .." § 3103.20(b)(1) and (2). Any such decision may be appealed to the appropriate state court within 10 days "to correct errors of laws in such decision." § 3103.20(g)(3).

Applying the factors of the functional approach to the above-cited facts, it is clear that defendant Denk functioned in a quasi-judicial capacity when he presided over plaintiffs' administrative appeal. The local BSS/BA's matters are adversarial in

---

[4] Plaintiffs suggest that discovery is needed to flesh out defendant Denk's duties as chairperson of the local BBS/BA before the Court can rule on the availability of absolute judicial immunity. Because the duties and responsibilities of the BBS/BA in connection with administrative appeals are determined by the City's Charter and ordinances, and there is no disagreement as to Denk's role in the administrative appeal, additional discovery is not needed to resolve the narrow question of whether Denk's conduct in presiding over the board that decided plaintiffs' administrative appeal was quasi-judicial in nature.

nature, as the board must give notice to all parties and provide an opportunity to be heard. "These are hallmarks of adversarial proceedings." *Dotzel v. Ashbridge*, 438 F.3d 320, 327 (3d Cir. 2006). Following a hearing, the board is required to maintain a public record of the proceedings, and reduce any decisions to writing, specifically setting forth supporting reasons for any decision. While the requirement of a written decision is, in and of itself, "quintessentially judicial," it also serves as an important safeguard against improper conduct. *Dotzel*, 438 F.3d at 326-27. Finally, the ability to correct any errors of the local BBS/BA through appeal "is probably the single most court-like feature a governmental body can have." *Dotzel*, 438 F.3d at 327;[5] *see Heyde,* 633 F.3d at 519 ("The basis of the absolute immunity of judges is less that they are unlikely to commit wrongs than that their wrongs are largely remediable through the appellate process.") (citations omitted).

Based on the foregoing, the Court must conclude that defendant Denk is entitled, as a matter of law, to absolute immunity for his participation in the local BBS/BA appeal from the condemnation order.[6] To the extent that defendants' motion

---

[5] The two remaining factors also favor a finding of quasi-judicial conduct. While members of the local BBS/BA are appointed by the Mayor, they may only be removed on "proof of official misconduct, or of negligence in official duties…." Cleve. City Charter § 76-6(c). Prior to such removal, a board member is entitled to a copy of the charges and a hearing on the subject. *Id.* These protections demonstrate that Local BBS/BA members enjoy a degree of insulation from political influence. Finally, as is the case with many government functions, the treatment of property can be quite contentious, and the need for relief from potential harassment for issuing decisions that affect the rights of property owners is obvious, and the threat of retaliatory lawsuits is very real. *See Dotzel*, 438 F.3d at 325-26; *Irshad Learning Ctr.*, 804 F. Supp. 2d at 711 (risk of retaliatory lawsuits against zoning board members supported a finding of absolute judicial immunity).

[6] This immunity only extends to Denk's individual capacity. Denk, like the other individual defendants, was sued in his individual and official capacity. To the extent he is sued in his official capacity, it is tantamount to a suit against the local BBS/BA, itself, which may not be entitled to relief from liability. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("The only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); *see also Owen v. City of Independence*, 445 U.S. 622, 657 (1980) (municipalities have no immunity from § 1983 actions); *see, e.g., Aitchison v. Raffiani*, 708 F.2d 96, 100 (3d Cir. 1983) (absolute immunity of individual defendants does not preclude liability of municipality).

seeks immunity for Denk for conduct related to the administrative appeal, this portion of the defendants' motion to dismiss is granted. (*See* Compl. at ¶ 19.) The Complaint, however, does not limit Denk's alleged culpable conduct to his consideration of plaintiffs' administrative appeal. Instead, the Complaint provides that all of the defendants "caused the building to be demolished . . .," and plaintiffs further argue that it is this action that is the source of their injury. (Compl. at ¶ 21; Doc. No. 8, Page ID # 851.) The Court, therefore, cannot definitively say, at this stage of the proceedings, that defendant Denk is absolutely immune from all possible liability in this case.

## IV.        CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss (Doc. No. 4) is granted in part. To the extent that the motion seeks absolute judicial immunity for defendant Denk for his participation in the administrative appeal of the condemnation order, the motion is granted. In all other respects, the motion to dismiss is denied. Plaintiffs' motion to strike (Doc. No. 7) is also denied.

**IT IS SO ORDERED**.

Dated: July 5, 2012

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**