UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMBASSY REALTY INVESTMENTS, INC., et al., | ) ) ) ) | CASE NO.  1:11CV1545 |
| PLAINTIFFS, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| CITY OF CLEVELAND, et al., | ) ) ) | |
| DEFENDANTS. | ) | |

On or about August 7, 2009, defendant City of Cleveland (the "City") demolished a building owned by plaintiff Embassy Realty Investments, Inc. ("Embassy"), after finding various housing violations that purportedly rendered the property a nuisance. This matter comes before the Court upon the motion of defendants, the City, Edward Rybka, Ronald O'Leary, Timothy Wolosz, David Cooper, Joseph Denk, Sr., and Peter Stewart (collectively "defendants"), for summary judgment. (Doc. No. 21.) Plaintiffs, Embassy, John Barnes, Jr., and Captain Buffalo Foods, Inc. (collectively "plaintiffs"), oppose the motion (Doc. No. 25-1), and defendants have replied (Doc. No. 27). For the reasons that follow, the motion is granted and all of plaintiffs' claims are dismissed. The Court declines to exercise supplemental jurisdiction over the counterclaim, and directs the Clerk to close this case.

**I.      BACKGROUND**

There is no dispute as to the administrative path the City took to raze the building on Embassy's property. However, because an understanding of the precise course the parties have travelled is needed to properly evaluate plaintiffs' constitutional claims, the Court will provide an administrative road map.[1] Where the parties dispute certain factual findings determined during those administrative proceedings, the Court will present those facts in a light most favorable to plaintiffs as the non-moving parties.

*A. The Property is Condemned*

The property at issue in this litigation is a parcel of commercial real estate located in Cleveland, Ohio. (Doc. No. 1, Complaint, at ¶ 9.) On December 8, 2008, Embassy purchased the property from plaintiff John Barnes, Jr. ("Barnes"), who had obtained the property from Southeast Cleveland Church of Christ, Inc. (the "church"). Barnes is a shareholder of Embassy. On July 13, 1998, while the property was still owned by the church, the City's Department of Community Development, Division of Building and Housing ("Building Department") issued a notice of violation of housing ordinances for the property, and condemned it. (Compl. at ¶ 11.) The notice was served upon the church, with the administrative right to appeal the notice to the Board of Zoning Appeals

---

[1] A detailed account of the administrative and judicial proceedings in state court is provided in defendants' memorandum in support of their motion to dismiss. (Doc. No. 4-1, beginning at 56.) The records from the state judicial proceedings were appended to defendants' motion to dismiss. (Doc. Nos. 4-2 through 4-16.) In addition to the complaint allegations, the materials appended to the summary judgment briefing, and the affidavit of John Barnes, Jr., which was appended to plaintiffs' motion for a temporary restraining order, filed in state court and incorporated by plaintiffs into their opposition to summary judgment (Doc. No. 24-2, beginning at 1638), the Court relies upon Doc. No. 4-1, and the documents appended thereto, in setting forth the relevant factual background for its discussion of the present summary judgment motion.

2

("BZA") and/or the Cleveland Board of Building Standards and Building Appeals ("local BBS/BA"). The church did not appeal the condemnation notice.

The notice was not, however, recorded and, according to plaintiffs, this rendered the notice defective "on both procedural and substantive grounds" and left prospective purchasers unable to "properly ascertain the condition of the property." (Compl. at ¶¶ 10-11.) Additionally, the City took no further action on the condemnation for more than nine years. Because the notice was not recorded and the City had not acted upon it, Barnes's title search in 2005 did not uncover the City's notice of violation. (*Id.* at ¶ 10.) This, coupled with the fact that the church apparently chose not to disclose the property's many deficiencies to prospective buyers, meant that Barnes purchased the property unaware that it had been condemned. (Compl. at ¶ 10.)

Barnes had big plans for the property. In 2007, Barnes hired a licensed architect to draft plans to remodel the building located on the property. He submitted the plans to the City's Building Department in order to obtain construction permits, and contracted with plaintiff Captain Buffalo Foods, Inc. ("Captain Buffalo") to construct a coffeehouse and business offices in the building. (*Id.* at ¶¶ 12-14; Doc. 24-2 [Exhibit B], Affidavit of John Barnes, Jr., at ¶¶ 4-5.) On May 2, 2007, the City issued a building permit for the building, which was later withdrawn due to the 1998 violations notice. (Barnes Aff. at ¶ 18.)

On January 9, 2007, the Building Department performed an inspection of the property. Based upon that inspection, on January 10, 2007, the Building Department issued a second notice for building code violations at the property. (Barnes Aff. at ¶ 14.) The notice included a stop work order for illegally constructing a second floor onto the

3

building without proper plan approvals and building permits. The notice, which was issued to Barnes, informed Barnes of his administrative right to appeal to the City's appeals boards. Barnes never appealed this violation notice to either administrative appeals board.

### B. Barnes Seeks Building Permits and Zoning Variances

Instead, between February 2007 and February 2009, Barnes filed four applications for building permits through the Building Department to add a second and third floor to the existing building.[2] (Barnes Aff. at ¶¶ 15-20, 23, 30.) Each permit was initially denied by the Zoning Division of the Building Department for not meeting certain zoning codes. Barnes appealed each denial to the BZA, and sought certain zoning variances. After the first denial, the BZA conducted a public hearing on October 29, 2007, and ultimately voted to deny the appeal. Barnes appealed that decision to the common pleas court, but failed to timely serve BZA as required by OHIO REV. CODE § 2506 and the appeal was dismissed. (*Id*. at ¶ 21.)

On appeal from the second, third and fourth rejected applications, the BZA decided not to conduct a public hearing on the variance requests based on *res judicata* grounds and denied the appeals. The court of common pleas affirmed the BZA's decision on the second application, but before the common pleas court could rule on the

---

[2] Barnes also sought two separate writs of mandamus from state courts, both of which were designed to compel the City to issue the necessary permits for Barnes to convert the property into a coffee house. The first writ petition was dismissed by the Cuyahoga County Court of Common Pleas on May 19, 2008. (Barnes Aff. at ¶ 25.) The second writ petition, directed to the Ohio Supreme Court, was also dismissed.

third appeal, Barnes filed a motion for a temporary restraining order. The common pleas court entered a temporary restraining order blocking the demolition of the building. The matter was resolved when the parties agreed that Barnes would file an application with the local BBS/BA to resolve the demolition issue. (Barnes Aff. at ¶¶ 22, 30.)

On August 5, 2009, the local BBS/BA held a final hearing on the property, and issued an emergency resolution providing for immediate demolition. The City began demolition, but Barnes filed for and received a temporary restraining order from the common pleas court in the third appeal, and the demolition was halted. On August 10, 2009, after an evidentiary hearing, the common pleas court granted the City's motion to dissolve the temporary restraining order. Barnes did not take a further appeal in the state appellate court. Barnes's appeal from the denial of his fourth application for a building permit was dismissed on December 15, 2009 because he failed to file a brief on the merits.

### C.  Embassy Appeals the Condemnation Order

While Barnes was prosecuting his permit applications, Embassy filed an appeal with the local BBS/BA from the original 1998 condemnation violation. Among the issues raised by Embassy was the validity of the notice of condemnation as it applied to subsequent purchasers. The local BBS/BA conducted two public hearings (on June 10, 2009 and August 5, 2009) and conducted a site inspection of the property on August 3, 2009. During the site inspection, it was observed that the building was continuing to deteriorate and was in a state of disrepair. (Doc. No. 21-3, Deposition of defendant Ronald O'Leary, at 1319-20, 1361-2; *see, generally,* Doc. No. 25-1, Plaintiffs'

Opposition Brief, at 1695 ["The building in question was not habitable as it was and Barnes knew it would require substantial work to bring [it] up to code."]).

At the conclusion of the hearings, the local BBS/BA denied Embassy's appeal, upheld the violation notices and remanded the matter back to the City's Building Department for further proceedings. The local BBS/BA issued an emergency resolution, making its decision immediately effective, and the City began to demolish the property until, as previously noted, it was briefly enjoined by the common pleas court through Barnes's appeal on his third permit application. Upon the dissolution of the injunction, the City completed its demolition at the site.

On August 18, 2009, Barnes, on his own behalf and on behalf of Embassy and Captain Buffalo, filed an appeal under OHIO REV. CODE Chapter 2506 from the local BBS/BA decision on the initial condemnation order in the common pleas court. Upon plaintiffs' notice of voluntary dismissal under OHIO R. CIV. P. 41(A), the common pleas court dismissed the appeal. However, it is undisputed that Barnes's appeal from the denial of the third permit application was still pending when the building was razed. (Opposition Brief at 1696.)

### D.  *Plaintiffs File the Present Action*

On August 26, 2011, plaintiffs filed the present action wherein they asserted claims under 42 U.S.C. § 1983 for the violation of various constitutional rights, including: (1) the right to due process under the Fourteenth Amendment; (2) the Fourth Amendment right to be free from unreasonable searches and seizures; and (3) unlawful

6

taking under the Fifth Amendment. Plaintiffs also asserted a *Monell*[3] claim against the City. The City has brought a counterclaim to recover the costs of the demolition.

Defendants seek summary judgment on all claims raised in the complaint, as well as their counterclaim. In their opposition to summary judgment, plaintiffs emphasize that the "crux of plaintiffs' [c]omplaint is that while an appeal of prior administrative rulings was pending, and without any further court orders, warrants or permission from any entity, including plaintiffs, the City and the other named defendants caused a commercial building owned by plaintiffs to be demolished, in violation of plaintiffs' rights . . . ." (Opposition Brief at 1693.)

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. FED. R. CIV. P. 56(C)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant

---

[3] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 1197, 103 L. Ed. 2d 412 (1978).

7

relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina College v. Russell*, 499 U.S. 225 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The

non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. DISCUSSION

The Court now turns to plaintiffs' claims. To establish a constitutional claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, prove: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) [that was] caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

#### A. *Procedural Due Process*

"The Due Process Clause of the Fourteenth Amendment does not prohibit every deprivation by the state of an individual's life, liberty or property. Only those deprivations carried out without due process are actionable under 42 U.S.C. § 1983." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). "Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing." *Id*.; *Eaton v. Charter Twp. of Emmett*, 317 F. App'x 444, 447 (6th Cir. 2008).

Plaintiffs complain that they were denied due process because the 1998 initial condemnation notice was invalid. This issue was raised before and rejected by the local BBS/BA, and plaintiffs took an appeal from that decision to the common pleas court pursuant to OHIO REV. CODE § 3781.031(D) but voluntarily dismissed their appeal.

9

Plaintiffs waived this procedural due process objection to the City's condemnation notices when they voluntarily dismissed their appeal.

In *State ex. Rel. Nicholson v. Toledo*, No. L-11-1072, 2012 WL 4338489 (Ohio Ct. App. Sept. 17, 2012), a homeowner brought a mandamus action to initiate appropriations proceedings that would compensate him for the City's demolition of his home. Throughout his petition, the homeowner challenged the City's decision to demolish his home on the ground that the building was not sound. Finding that the homeowner had a right to directly appeal the decision of the housing authority to the common pleas court but failed to do so, the court dismissed the petition. In so ruling, the court observed that "[t]he fact that [realtor] failed to timely pursue his right of appeal does not make that remedy inadequate." *Id*. at *6 (internal cite omitted).

In *Hroch v. City of Omaha*, 4 F.3d 693 (8th Cir. 1993), the property owner challenged the substance of the condemnation notice because it did not specify the particular housing code violations that were alleged to have been violated. Emphasizing that "[t]he fundamental requirement of due process is the *opportunity* to be heard at a meaningful time and in a meaningful manner[,]" the court found that the property owner's failure to pursue this issue at the administrative level constituted a waiver. *Id*. at 696 (emphasis in original) (internal citation omitted). A similar result is warranted here. While plaintiffs raised the issue of the alleged defects in the initial condemnation notice before the local BBS/BA, they abandoned their appeal. Plaintiffs cannot complain that the administrative process was inadequate to address the alleged notice violation merely because they chose not to fully avail themselves of it. *See Santana v. City of Tulsa*, 359

F.3d 1241, 1244 (10th Cir. 2004) ("A party cannot create a due process claim by ignoring established procedures.").

Of course, the treatment of the 1998 notice is a red herring because it is undisputed that plaintiffs had *actual* notice of the condemnation, and were given a full and fair opportunity to be heard prior to the deprivation. *See Hroch*, 4 F.3d at 696 ("Because Hroch had actual notice that the City intended to condemn all buildings on the premises, there was no procedural due process violation.") Embassy challenged the 1998 condemnation notice, and the local BBS/BA held two hearings. At these hearings, Embassy was able to raise the issue of the alleged defects in the original condemnation notice. Such process satisfied plaintiffs' rights under the Fourteenth Amendment.[4] *See, generally, Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *see, e.g.*, *Dubuc v. Twp. of Green Oak*, 406 F. App'x 983, 987 (6th Cir. 2011) (no procedural due process violation where property owners had actual notice of the impending determination on the nonconforming use of their property and were

---

[4] The real notice that plaintiffs believe was lacking was notice back in 1998 to the public at large, including any subsequent purchasers of the property, that the property had become a public nuisance and was condemned. Yet, the City properly advised the property owner at the time of the determination—the church—of the condemnation, and, as will be discussed *infra.*, it was the church's legal duty to apprise potential buyers of any deficiencies in the property. Plaintiffs received actual pre-deprivation notice and an opportunity to be heard, and due process requires nothing more.

11

given an opportunity to be heard on a number of occasions). Defendants are entitled to summary judgment on plaintiffs' procedural due process claim.

### B. Substantive Due Process

The right not to be subject to "arbitrary or capricious" action by a state either by legislative or administrative action is commonly referred to as a "substantive due process right." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992). In *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court discussed at length how the "substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscious shocking, in a constitutional sense." 523 U.S. at 847 (internal quotes omitted). Under this demanding standard, a plaintiff must demonstrate that the defendants "acted in a manner offensive of community standards of decency and with a callous indifference to plaintiffs' rights, so to rise to the level of reckless or appalling behavior." *Davet v. City of Cleveland*, Case No. 1:03CV1623, 2004 U.S. Dist. LEXIS 31797, at *19 (N.D. Ohio Mar. 4, 2004) (available only on LEXIS), *aff'd, as amended*, 456 F.3d 549 (6th Cir. 2006).

To the extent the complaint can be interpreted as raising a substantive due process claim, such a claim cannot survive summary judgment. The building in question was condemned and ultimately razed in accordance with local ordinances and state law. Cleveland Codified Ordinances ("CCO") § 3103.09(h)(1) provides:

> In case the owner, agent or person in control fails, neglects or refuses to comply with the notice to repair or rehabilitate, or to demolish and remove a public nuisance or unsafe building, structure or a portion of those, the Director may take appropriate action to demolish and remove an unsafe

12

>structure or to remove or abate any condition that is defined as a nuisance under this chapter.

The matter was automatically stayed while the appeal was pending before the local BBS/BA. However, there is no automatic stay after the BBS/BA makes a final decision on a condemnation order, and after the local BBS/BA issued its final decision denying Embassy's appeal, it properly remanded the matter back to the City's Building Department. There is no law requiring an automatic stay in this situation. Likewise, local ordinances do not require the City to obtain court approval to abate a public nuisance.

As the Sixth Circuit has observed, "no court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety." *Harris*, 20 F.3d at 1405; *see Davet v. City of Cleveland*, 456 F.3d 552 (6th Cir. 2006) (affirming district court's conclusion that "the substantive due process claim failed because [plaintiff] could not establish that the city's actions (taken pursuant to a valid condemnation order and in accordance with the procedures mandated by city and state law) 'shock[ed] the conscience]' or were 'arbitrary and capricious'").

Plaintiffs concede that there were no legal impediments to the demolition (e.g. state statutes or local ordinances). (Opposition Brief at 1699 ["Once the BBS rules on the appeal, the stay is lifted and if the BBS affirms the building department, the city is free to take enforcement action."].) Plaintiffs have not challenged the constitutionality of these statutes and ordinances, and, in the absence of a constitutional defect in the administrative process, the Court cannot find that the City's observance of its ordinances shocks the conscience. Plaintiffs' suggestion that the City "had [other] options" short of

13

demolition does not change the bottom line: the City acted in accordance with governing law when it abated the nuisance.[5] Such conduct cannot, as a matter of law, violate substantive due process.[6]

### C. Taking Under the Fifth Amendment

The Fifth Amendment proscribes the taking of property without just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). Such compensation, however, is not mandated where the state legitimately exercises its police power to abate a public nuisance. *Davet*, 456 F.3d at 553 (citing *Lucas v. S.C. Costal Council*, 505 U.S. 1003, 1022-24, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992) (further citation omitted)); *see Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491 n.20, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987) ("[S]ince no individual has a right to use his property so as to create a nuisance or otherwise harm others, the State has not 'taken' anything when it asserts its power to enjoin the nuisance-like activity.") Here, the record evidence is clear that the property was condemned pursuant to established law. Under similar

---

[5] Plaintiffs observe that the City "could have temporarily shored up any hazardous areas or boarded the building up to prevent entry or further deterioration." (Opposition Brief at 1702 [citing O'Leary Dep. at 1328].) But they point to no legal requirement that the City take such steps.

[6] Equally unavailing are plaintiffs' attempts to collaterally attack the administrative determination that the property was a nuisance. While plaintiffs insist that there is a question of fact as to whether the property posed a danger to passersby, this question was firmly decided by the local BBS/BA and plaintiffs elected not to appeal that decision. Such a determination is entitled to preclusive effect. *Davet*, 456 F.3d at 552 ("[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.") (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986)); *see, e.g., Crow v. City of Springfield*, 15 F. App'x 219, 224 (6th Cir. 2001) ("the question of whether Crow's property constituted a public nuisance has been fully and finally litigated by Crow's failing to avail himself of a right of appeal to a hearing which would have provided a full opportunity to litigate that question").

circumstances, this Court has previously refused to find a Fifth Amendment violation where action is taken to remedy a nuisance. *See, e.g., Jamison v. Angelo*, Case No. 4:10CV2843, 2012 WL 4434152 (N.D. Ohio Sept. 24, 2012).

Plaintiffs attempt to distinguish *Jamison*, asserting their belief that the initial condemnation notice was deficient because it was not recorded. Plaintiffs cite no authority for their position that condemnation notices must be recorded. Rather, the duty to put potential buyers on notice of such deficiencies falls to the property owner. OHIO REV. CODE § 5301.253(A) requires the real estate seller to notify the buyer of any written notice that the property is in violation of the building or housing code. Specifically, § 5301.253(A) states as follows:

> The owner of any property who has received written notice that the property is in violation of any building or housing code shall give the purchaser or grantee of the property written notice of the code violations prior to entering into an agreement for the transfer of title to the property, or if the owner does not enter into a written agreement for the transfer, prior to the filing for record of a deed to the property. Any notice or order of a court or of a housing or building authority of the state or a political subdivision that relates to a violation of the building or housing code of the state or any political subdivision and that appears on the public records of the issuing authority is notice to all subsequent purchasers, transferees, or any other persons who acquire any interest in the real property in which the violation exists and may be enforced against their interest in the real property without further notice or order to them.

While plaintiffs may have had a right to expect the *church* to apprise them of the many building and housing code violations cited by the City before they purchased the property, this alleged omission by a third party does not render the subsequent condemnation proceedings initiated by the City invalid, especially where plaintiffs had

15

actual notice of the condemnation and an opportunity to fully litigate the issue.[7] Faced with these uncontroverted facts, plaintiffs cannot establish, as a matter of law, the existence of an unlawful taking in violation of the Fifth Amendment.

### D. The Fourth Amendment and Warrantless Entry

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend IV. Although the Sixth Circuit has not had an opportunity to address the issue, several other circuits have held that the warrantless entry to abate a nuisance does not violate the Fourth Amendment provided such entry does not invade a constitutionally-protected privacy interest. *See Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001) (warrantless entry upon condemned property for purposes of demolition did not violate property owners' Fourth Amendment rights); *Schneider v. Cnty. of San Diego*, 28 F.3d 89 (9th Cir. 1994) (county's warrantless seizure of vehicles creating a public nuisance upheld as constitutional where owner had no legitimate expectation of privacy in a field adjacent to a house in which he did not live); *Hroch*, 4 F.3d 693 (8th Cir. 1994) (demolition without a warrant of deteriorated buildings condemned as public nuisances was not an unreasonable seizure, where owner neither lived in the buildings nor took any steps to protect the personal property contained in the buildings).

---

[7] Section 3103.09(e) of the Cleveland Building Code requires the Director of Building and Housing to provide notice of any building code violations to the "the owner, agent or person in control of the building, structure or portion and to any mortgagee of record[.]" There is no requirement that the notice be advertised or recorded. Additionally, § 3103.01(c) instructs the Director to keep a "permanent, accurate record of all of the business of the Department[,]" and further provides that these records "shall be open to public inspection[.]" Plaintiffs have not suggested that the Director failed to keep such records, nor have they intimated that they attempted to review such records but were not permitted to do so.

City officials caused a demolition team to enter plaintiffs' property to raze a building that had been condemned as a public nuisance years before plaintiffs had any interest in the property. Plaintiffs received actual notice of the condemnation, and were afforded an opportunity on two separate occasions to be heard prior to the deprivation. The building was apparently vacant at the time of the demolition, and plaintiffs concede that the commercial property was not habitable and would have required considerable work to bring it up to code. Given these undisputed facts, plaintiffs cannot be heard to say that they had a legitimate expectation of privacy in this condemned building.

Relying on the analysis set forth in the aforementioned cases from the Eighth, Ninth, and especially the Fifth Circuit, this Court has previously found that the Fourth Amendment does not prohibit a warrantless entry to abate a nuisance under similar circumstances, and the Court finds it appropriate to do so here, as well. *See, e.g., Jamison*, 2012 WL 4434152, at *10 (a warrant was not necessary for city officials to enter condemned properties for the purpose of remediating public nuisances). Defendants are entitled to summary judgment on plaintiffs' Fourth Amendment claim.[8]

### E. Monell Claim

"To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom was the 'moving

---

[8] Even if the Court were to have found that a warrant was necessary, plaintiffs' Fourth Amendment claim would have failed, as a matter of law, because the undisputed facts demonstrate that the judicial oversight provided as part of the condemnation process "provide[d] a constitutionally adequate substitute for a warrant." *See Hroch*, 4 F.3d at 696-97 (quoting *Donovan v. Dewey*, 452 U.S. 594, 603 (1981)). There is no dispute that plaintiffs were afforded a full and fair opportunity to litigate the condemnation notice, including multiple hearings and the right to appeal to the common pleas court. *Cf. Gould v. Symons*, Case Number 01-CV-10026-BC, 2002 WL 2031563, at *8 (E.D. Mich. Sept. 4, 2002) (rejecting the argument that the administrative condemnation proceeding, which was limited to a site inspection by a field inspector and review by a building department employee, provided protection equivalent to the disinterested review of a neutral and detached magistrate).

force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 1197, 103 L. Ed. 2d 412 (1978). Such a policy or custom must be "so permanent and well settled" as to have "the force of law." *Monell*, 436 U.S. at 691.

The complaint makes only the vaguest allusions to a *Monell* claim, in that it provides simply that "the City had a policy and practice, as outlined above, of demolishing privately-owned properties without any authority." (Compl. at ¶ 35.) The only possible factual allegation set forth to support this amorphous claim is the assertion that the 1998 condemnation notice was not recorded (*Id.* at ¶ 11), and, as this Court has concluded, such a posting is neither a legal nor a constitutional requirement. Rather than develop this claim in opposition to summary judgment with record support and tailored argument, plaintiffs' opposition brief contains a one-sentence defense of its *Monell* claim, to wit: "For the reasons set forth above, the City is liable under *Monell* as having policies and practices that violated plaintiffs' constitutional rights." (Opposition Brief at 1714.)

Such a showing is wholly inadequate in the light of defendants' properly supported summary judgment motion. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quote and cites omitted).

Even if the Court were inclined (and able) to put flesh on the bones of plaintiffs' *Monell* claim, it would still fail. As this Court has determined, the City did not

18

violate plaintiffs' constitutional rights when it abated a nuisance on Embassy's property. Plaintiffs cannot, therefore, demonstrate that the City's policy or practice of demolishing condemned properties resulted in a constitutional deprivation. This claim, too, is subject to dismissal.

### F. Supplemental Jurisdiction over Counterclaim

With the dismissal of the federal constitutional claims, the remaining claim—defendants' counterclaim to recover the costs of the demolition—is founded in state law only. OHIO REV. CODE § 715.261. The decision as to whether to exercise supplemental jurisdiction over state law claims that derive from the same nucleus of operative facts as the dismissed federal claims is left to the discretion of the trial court. 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). When, as here, the court dismisses all federal claims before trial, the court should generally deny jurisdiction over the state-law claims. *See Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 853 (6th Cir. 2007) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)); s*ee also City of Chicago v. Int'l College of Surgeon*, 522 U.S. 156, 173, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997) ("'The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)); *Hall v. Hebrank*, 102 F. Supp. 2d 844, 865 (S.D. Ohio 1999) (citing *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997) ("It is well settled that a District Court may decline to exercise supplemental jurisdiction over state claims once it has dismissed all claims over which it possessed original jurisdiction.")); *Musson*

*Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law claims, or remanding them to state court if the action was removed.") Because all of the federal claims have been dismissed, and after reviewing the relevant considerations, *see City of Chicago*, 522 U.S. at 173, the Court refuses to exercise supplemental jurisdiction over the state law counterclaim. *See, e.g., Babandi v. Allstate Indem. Ins. Co*., No. 1:07CV329, 2008 WL 906116 (N.D. Ohio Mar. 31, 2008) (remanding state claims, including a counterclaim to recover demolition costs, following summary dismissal of constitutional claims).

**IV.** **CONCLUSION**

For all of the foregoing reasons, defendants' motion for summary judgment is granted, in part. Plaintiffs' claims are dismissed with prejudice, and defendants' state law counterclaim is dismissed without prejudice. This case is closed.

**IT IS SO ORDERED**.

Dated: October 4, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**